UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KATHRYN ROSS-NASH,

    Plaintiff

v.

SUNNI ALMOND,

    Defendant

Case No.: 2:19-cv-00957-APG-NJK

**Order Denying Plaintiff's Motions for Summary Judgment**

[ECF Nos. 39, 58]

Plaintiff Kathryn Ross-Nash sues defendant Sunni Almond for copyright infringement. Ross-Nash is the author of a Pilates book titled *The Red Thread of Pilates — The Integrated System and Variations of Pilates — The Mat* (*Red Thread*). Almond is a Pilates instructor. Ross-Nash found out that Almond had photocopied *Red Thread* and sold the copy, so she sued Almond for copyright infringement.

Almond counterclaims for defamation, intentional interference with prospective economic advantage, intentional interference with contractual relationships, and intentional infliction of emotional distress. The basis for her counterclaims is that Ross-Nash posted about the copying on her Facebook page and contacted Almond's business associates. Almond contends that Ross-Nash defamed her through these conversations and by commenting on the Kathi Ross-Nash Red Thread Facebook page.

Ross-Nash moves for summary judgment on the counterclaims. The parties are familiar with the facts, so I do not repeat them here except where relevant. I deny Ross-Nash's motions for summary judgment.

/ / / /

/ / / /

## I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

### A. Defamation

Almond argues that Ross-Nash defamed her in three ways: by commenting on Facebook that an estimated 100 copies of *Red Thread* were sold over a period of two years, by confirming a Facebook post by Kylene Law stating that Almond's actions cost Almond two jobs, and by telling Almond's business associates that Almond sold 100 copies of *Red Thread*. Ross-Nash contends that she cannot be liable because the absolute privilege and a qualified privilege cover her statements. Ross-Nash also argues that Section 230 of the Communications Decency Act immunizes her from liability for Facebook comments by third parties.

*1. Absolute privilege*

Ross-Nash contends she is protected from liability by the absolute privilege because her statements were directly related to finding more information about Almond's infringement and Ross-Nash was contemplating litigation. Almond responds that Ross-Nash's conduct is not protected because the third parties she contacted do not have a sufficient interest in the litigation.

"It is a long-standing common law rule that communications [made] in the course of judicial proceedings [even if known to be false] are absolutely privileged." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 502 (internal quotation omitted). "[F]or the privilege to apply (1) a judicial proceeding must be contemplated in good faith and under serious consideration, and (2) the communication must be related to the litigation." *Id.* at 503. When determining whether the privilege applies, I "should resolve any doubt in favor of a broad application." *Id.* at 502.

"[S]tatements to someone who is not directly involved with the actual or anticipated judicial proceeding will be covered by the absolute privilege only if the recipient of the communication is 'significantly interested' in the proceeding." *Jacobs v. Adelson*, 325 P.3d 1282, 1285 (Nev. 2014) (quoting *Fink v. Oshins*, 49 P.3d 640, 645-46 (Nev. 2002)). To assess "the significant interest of the recipient," I must "review . . . the recipient's legal relationship to the litigation, not their interest as an observer." *Jacobs*, P.3d at 1287. "[T]he nature of the recipient's interest in or connection to the litigation is a case-specific, fact-intensive inquiry that must focus on and balance the underlying principles of the privilege." *Id.* (quotation omitted). The underlying principles include promotion of "the truth finding process in a judicial proceeding," encouraging "discussion between the parties and their counsel in order to resolve

disputes," and avoiding hindrance of "investigations or the detailing of claims." *Id.* at 1286 (quotations omitted).

Ross-Nash has not demonstrated that her over 5,000 Facebook followers are significantly interested in the outcome of the litigation to support application of the privilege. Thus, her statements on Facebook are not covered by the absolute privilege.

As to Almond's business associates, Ross-Nash argues they are significantly interested because she was "seeking to identify potential infringement defendants or . . . potential witnesses." ECF No. 53 at 11. She relies on the Supreme Court of Nevada's statement that "[f]or a statement to fall within the scope of the absolute litigation privilege it must be made to a recipient who has a significant interest in the outcome of the litigation or who has a role in the litigation." *Shapiro v. Welt*, 389 P.3d 262, 269 (Nev. 2017) (citing *Fink*, 49 P.3d at 645-46; *Jacobs*, 325 P.3d at 1287). While *Shapiro* did not clarify what constitutes a role, "a person who is not directly involved" in the proceeding must still be significantly interested for the privilege to apply. *Id.* at 269. "A nonparty recipient must have a relevant interest in, or a connection to, the outcome of the proceeding." *Jacobs*, 325 P.3d at 1287 (citing examples such as trustees and beneficiaries of a trust having a significant interest in litigation regarding that trust) (citations omitted). *See also Fink*, 49 P.3d at 645-46 (concluding that "Dr. Lewin played no significant role and had no significant interest in Denise's efforts to remove Fink as the independent trustee" where Dr. Lewin was "Denise's counselor, family doctor, and distant relative" and "was considering involving Fink . . . in his own trust"). The possibility that Almond's business associates theoretically could have been witnesses to her copyright infringement, without more, does not mean they have a role in the litigation. I therefore find that Ross-Nash's statements to the business associates are not protected by the absolute privilege.

4

### 2. *Qualified privilege*

"A qualified or conditional privilege exists where a defamatory statement is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or a duty, if it is made to a person with a corresponding interest or duty." *Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983). Statements covered by a qualified privilege "are not actionable unless the privilege is abused by publishing the statements with malice." *Bank of Am. Nev. v. Bourdeau*, 982 P.2d 474, 476 (Nev. 1999).

Ross-Nash argues that Almond's business associates have an interest in knowing about the copyright infringement "so they could make sure Almond did not engage in such conduct in conjunction with their respective businesses" and "so they could independently act in such a way to preserve their reputations." ECF No. 39 at 15. Ross-Nash primarily relies on *Maggio v. Liztech Jewelry*, but as Almond points out, the third parties contacted in that case were people who sold the plaintiff's merchandise. 912 F. Supp. 216, 219 (E.D. La. 1996). The *Maggio* court concluded that the defendant "had a reasonable interest in communicating her belief [about copyright infringement] to the third party sellers, and they likewise had an interest in learning about her concerns in order to avoid liability for selling infringing work." *Id.* at 221. Here, there is no evidence that the business associates sell infringing products from Almond.[1] Ross-Nash has not provided other evidence to support her assertion that the business associates have a corresponding interest. Thus, her statements to Almond's business associates are not covered by a qualified privilege.

---

[1] In her deposition, Ross-Nash testified she had no reason to believe Juliet Clingan was involved in the unauthorized copying of *Red Thread*, selling any copies for Almond, or in possession of any infringing copies. ECF No. 51-7 at 20. She further testified she did not suspect that Smith, Dunphy, Catrone, and Dana Santi "were involved with unauthorized copies." *Id.* at 26-27.

5

Ross-Nash contends that her statements on Facebook are protected by a qualified privilege because they were "directed toward third parties" who knew about the copyright infringement "in order for those persons to come forward and provide . . . additional details." ECF No. 39 at 16. Ross-Nash has not demonstrated that her 5,000 Facebook followers had a corresponding interest or duty related to the copyright infringement, so her statements on Facebook are not covered by a qualified privilege.

### 3. *Communications Decency Act*

Ross-Nash argues that under the Communications Decency Act (CDA), she cannot be held liable for Kylene Law's Facebook comments about Almond. Almond responds that the CDA does not apply because Ross-Nash was an active content creator, publisher, and speaker by commenting on and "liking" Law's comments. On a post by Law stating that Almond's actions cost Almond two jobs, Rosanne Perkins asked Ross-Nash whether "this [is] about people who stole your writings" and Ross-Nash answered, "Rosanne Perkins yes." ECF No. 39-14 at 45.

Section 230 of the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c). "This grant of immunity applies only if the interactive computer service provider is not also an 'information content provider.'" *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). The definition of "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3).

Ross-Nash has not established she is entitled to CDA immunity. Although Ross-Nash contends it is unclear what post prompted Rosanne Perkins' post to which Ross-Nash responded,

6

Ross-Nash is the party moving for summary judgment. If Rosanne Perkins was not responding to Law's comments (or similar comments prompted by Law's original post), then Ross-Nash could and should have presented evidence to show that. From the evidence at this stage of the proceedings, it appears that Ross-Nash was a content provider when she commented "yes" on Law's post. Ross-Nash has therefore not established that she is immunized by the CDA.

*4. Whether the statements are defamatory*

Ross-Nash argues that her statements were not defamatory because she never identified Almond on Facebook and she denies telling Almond's business associates that Almond sold 100 copies of *Red Thread*. Almond responds that Ross-Nash is liable because she endorsed comments that identified Almond and confirmed Almond's identity in one of her own comments. She also asserts that Ross-Nash told her business associates that she sold 100 copies.

To succeed on a defamation claim, a plaintiff must prove four elements: "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pope v. Motel 6*, 114 P.3d 277, 315 (Nev. 2005). "However, if the defamatory communication imputes a 'person's lack of fitness for trade, business, or profession,' or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." *Clark Cnty. Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 503 (Nev. 2009) (quoting *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993)). For a defamation per se claim, "[n]o proof of any actual harm to reputation or any other damage is required for the recovery of damages." *K-Mart Corp.*, 866 P.2d at 282.

Viewing the evidence in the light most favorable to Almond, there is a genuine dispute about whether Ross-Nash told Almond's business associates that Almond sold 100 copies of *Red*

7

*Thread*. While there is no direct evidence that Ross-Nash made this specific accusation to the business associates, it is reasonable to infer that she did. Ross-Nash communicated to her 5,000 Facebook followers that 100 copies of *Red Thread* were sold. According to Almond, Ross-Nash also told Almond that she would "go public" if Almond did not identify all 100 buyers of the copied *Red Thread*. ECF No. 51-1 at 4. Almond asserts that business associates such as Kirk Smith and canceled engagements with Almond after Ross-Nash contacted them. *See* ECF Nos. 51-1 at 6; 51-3 at 12. Although not a strong case on the evidence before me, drawing inferences in the light most favorable to Almond, a reasonable jury could believe that Ross-Nash also told the business associates that Almond sold 100 copies of *Red Thread*.

As to the Facebook comments, Almond asserts that there are two defamatory statements on Ross-Nash's Facebook page: (1) Ross-Nash's comment that "there are estimated 100 copies sold over the past two years" and (2) Kylene Law's post that Ross-Nash confirmed, which states in relevant part, "Sunni Almond you still don't get it. YOUR actions cost you two jobs." ECF No. 51-3 at 7, 14. There is no evidence that Almond sold 100 copies of *Red Thread*, and Ross-Nash does not argue otherwise. The parties dispute whether the context of the comments identified Almond as the person who sold 100 copies over two years and cost herself two jobs.

"In determining whether a statement constitutes defamation per se, words 'are to be taken in their plain and natural import according to the ideas they convey to those to whom they are addressed; reference being had not only to the words themselves but also to the circumstances under which they were used.'" *Cohen v. Hansen*, No. 2:12-cv-01401-JCM-PAL, 2015 WL 3609689, at *4 (D. Nev. June 9, 2015) (quoting *Talbot v. Mack*, 169 P. 25, 29 (Nev. 1917)). The Supreme Court of Nevada has looked to the Restatement (Second) of Torts regarding defamation claims. *See, e.g.*, *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993); *Cucinotta v. Deloitte*

*& Touche, L.L.P.*, 302 P.3d 1099, 1101-02 (Nev. 2013). "A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer." Restatement (Second) of Torts § 564.

Whether the circumstances of the Facebook comments convey Almond's identity to readers is a question of fact for a jury. On Law's post, which identified Almond, someone asked Ross-Nash whether "this [is] about people who stole your writings," and Ross-Nash answered "yes." ECF No. 39-14 at 45. As discussed above, the context of Ross-Nash's "yes" comment is not entirely clear. But a reasonable jury could conclude that Ross-Nash identified Almond as the copier and confirmed that Almond cost herself two jobs. Similarly, it is a question of fact whether the circumstances conveyed that Almond was the person who allegedly sold 100 copies over two years. Considering the comments and posts together, a reasonable jury could find that readers could conclude that Ross-Nash was referring to Almond. Indeed, at least two Facebook commenters did so. ECF No. 39-14 at 24 (third-party commenter stating, "I did not know that it could involve Sunni."); *id.* at 44 (another third-party commenter stating, "Wow! I did not expect it to be this person."). Accordingly, I deny Ross-Nash's motion for summary judgment on Almond's defamation counterclaim.

### B. Other Counterclaims

Ross-Nash also moves for summary judgment on Almond's counterclaims of intentional interference with prospective economic advantage, intentional interference with contractual relationships, and intentional infliction of emotional distress. Ross-Nash's only argument on these counterclaims is that she is protected by the absolute privilege and a qualified privilege. Because I concluded that neither privilege applies to Ross-Nash's statements, I deny her motion for summary judgment on these counterclaims.

## II. CONCLUSION

I THEREFORE ORDER that Plaintiff Kathryn Ross-Nash's motions for summary judgment (**ECF Nos. 39 and 58**) **are DENIED**.

DATED this 20th day of November, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE